1

2

3

4                              UNITED STATES DISTRICT COURT

5                            NORTHERN DISTRICT OF CALIFORNIA

6

7    ROBERT MICHAEL LINDBLAD,                    Case No.  21-cv-06606-SI

8                    Plaintiff,

9            v.                                  **ORDER OF DISMISSAL AND ORDER
                                                 ON PENDING MOTIONS**
10   CARLOS G. BOLANOS, et al.,
                                                 Re: Dkt. No. 59, 76, 77, 81
11                  Defendants.

12

13           Before the Court is a motion to dismiss the First Amended Complaint ("FAC") filed by

14   defendants San Mateo County, Jennifer Stalzer, Sheriff Carlos G. Bolanos, Deputy Andrew

15   Constantino, Deputy Ron Azar, Deputy Jimmy Chung, and Deputy Homing Cheung ("County

16   Defendants") pursuant to Fed. R. Civ. P. 12(b)(6).  Dkt. No. 77.  The FAC also names as defendants

17   City of Millbrae, the County Commission of San Mateo County, and Safeway Grocery Outlet.  *Id.*

18   Although these additional defendants have not filed a motion to dismiss, the Court will

19   contemporaneously evaluate, pursuant to 28 U.S.C. § 1915(e)(2), whether the FAC is legally viable

20   as to the County Defendants as well as the additional defendants.

21           As explained further below, the Court finds the complaint factually deficient against all

22   defendants and will accordingly **GRANT** County Defendants' motion to dismiss.  The Court also

23   finds dismissal of the FAC appropriate pursuant to the *in forma pauperis* statute.  Finally, dismissal

24   is proper on the independent ground of Fed. R. Civ. P. 8(a) for failure to present a short and plain

25   statement of the claims for relief.

26           Dismissal is without leave to amend.

27

28

United States District Court
Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

# BACKGROUND

**A. Procedural History**

Plaintiff Robert Lindblad commenced this federal action on August 26, 2021 against Sheriff Carlos G. Bolanos, Deputy Andrew Constantino, Deputy Ron Azar, Deputy Jimmy Chung, and Deputy Homing Cheung.  Dkt. No. 1.  The Court granted plaintiff leave to proceed *in forma pauperis* on September 7, 2021.  Dkt. No. 5.

Service on defendants was not deemed effective until November 23, 2015.  Dkt. No. 31. The Clerk entered default in plaintiff's favor on January 7, 2022 due to defendants' failure to respond to the complaint.  Dkt. No. 36.  Defendants promptly filed a motion to set aside the Clerk's entry of default, which this Court granted on February 28, 2022.  Dkt. No. 52.

Defendants also filed a motion to dismiss the complaint on January 31, 2022.  Dkt. No. 46. Plaintiff followed up with a motion for leave to amend, filed on February 28, 2022.  Dkt. No. 50. Although the Court expressed reservations that plaintiff's motion for leave to amend was "vague and difficult to follow" with respect to the proposed amendments, the Court found Fed. R. Civ. P. 15(a)(2) weighed in favor of granting, and so granted plaintiff's motion, rendering defendants' motion to dismiss moot.  Dkt. No. 56 (entered March 16, 2022).  The Court gave plaintiff until March 18, 2022—the date specified in plaintiff's own motion—to file the amended complaint.  *Id.* at 2.  In granting leave to amend, the Court remarked:

> Because plaintiff has had ample time to review the arguments raised in defendant's motion to dismiss, the Court does not anticipate granting further leave to amend in the event the Court finds merit to a subsequent motion to dismiss.

*Id.*  Plaintiff filed an untimely Amended Complaint on April 1, 2022.  Dkt. No. 60.

Plaintiff's amendment nearly quadrupled the length of the original complaint from 26 pages to 95 pages.  Although the Amended Complaint added as new defendants City of Millbrae, County Commission of San Mateo County, Safeway Grocery Outlet, San Mateo County, and Jennifer Stalzer, the complaint itself did not present new substantive factual allegations.  *Id.*  The Court thus found it appropriate to refrain from directing the Clerk of Court to issue the summons as to the new defendants until such time as the Court could "evaluate the merits of an anticipated dispositive

motion to be filed by the previously named defendants."  Dkt. No. 62.  Given plaintiff's *in forma pauperis* status, the Court also finds it appropriate to screen the Amended Complaint for viability pursuant to 28 U.S.C. § 1915(e)(2) prior to ordering the issuance of the summons.

**B. Factual Allegations in Amended Complaint**

The factual allegations in the Amended Complaint focus on events that occurred on three different days after plaintiff moved from Colorado to California: May 27, 2021, a day in July 2021, and August 19, 2021.  FAC at 9.[1]  Ever-present in the background of the FAC is an allegation that law enforcement agents from Colorado "followed" plaintiff to California and are conspiring with law enforcement in California to carry out clandestine surveillance with hopes of obstructing plaintiff's *pro se* litigation activities through intimidation and harassment.  *Id*. at 8, 11, 20.

The Court attempts to focus on nonfrivolous allegations only.

**1. May 27, 2021**

On May 27, 2021, Officer Constantino pulled over plaintiff in the City of Millbrae for not wearing a seatbelt.  The FAC states plaintiff "was listening to music and had not yet latched his seatbelt, which it will become easily seen by the bodycam video held by Officer Constantino, he specifically targeted the plaintiff from an unknown location after leaving his storage [unit] and identified the plaintiff as having no seat-belt latched."  *Id*. at 27.[2]  The FAC alleges Officer Constantino acted pursuant to a "premeditated plan to pull-over the plaintiff, after preparing such illegal investigation from an unknown location."  *Id*. at 27.  (The FAC alleges that, prior to the May 27, 2021 traffic stop, law enforcement from Colorado "sabotaged" Lindblad's vehicle "multiple times in route to California from Colorado, including chemicals placed in the canister of some fluids

---

[1] Although the FAC uses paragraph numeration to present allegations, the Court will rely on the ECF page numeration to cite the FAC because the paragraph numeration is not always coherent.

[2] The FAC also includes the following allegations: "The owner of Millbrae Storage is listed as John Cooper, who holds the same name as the plaintiff. It is alleged that agents from Colorado had seized the storage in the name of the plaintiff's uncle to set up fraudulent storage theft related activities and simultaneously monitor the plaintiff."  FAC at 24.

United States District Court
Northern District of California

located in reservoirs under the hood of the vehicle," and later took "bolts from the engine block" while plaintiff was parked somewhere in Millbrae, CA. *Id*. at 22, 36.  Officer Constantino is alleged to be in cahoots with these efforts by Colorado law enforcement. *Id*. at 26).

After pulling plaintiff over, Officer Constantino ran Lindblad's license and registration, which revealed that his "license was suspended," a fact which the FAC concedes was true. *Id*. at 28.  After asking plaintiff about the suspended license, plaintiff "notified the officer the courts in Colorado have been intentionally negligent involving 10 year old traffic judgment and he has been unable to proceed" with getting his licensee reinstated. *Id*.  Officer Constantino ordered plaintiff to step out of the vehicle. *Id*.  Three other officers arrived at the scene and "ignored" plaintiff requests for their identification.  The FAC states:

> plaintiff recalls multiple officers arriving on the scene who appear to have been deliberately intimidating in their behavior. Multiple officers had few words with the plaintiff but painted an ugly scene of portrayal.
> [ … ]
>
> Plaintiff remembers Officer Constantino becoming extremely rude with what the plaintiff attempts to recollect as coercion to intimidate the plaintiff by standing over him with abusive words that were evident—as an abusive tone—and antagonistic in nature—In a verbal language the plaintiff cannot quite recall.
> [ … ]
>
> Officer Constantino was aggressively acting in demeanor a very short distance from the plaintiff why the altercation occurred and was exhibiting aggression through body language at an approximation of two feet or less from the chest of the plaintiff

*Id*. at 29–30.  The FAC also alleges Officer Constantino "asked to search the vehicle of the plaintiff." FAC at 30.  "The plaintiff declined to have the vehicle searched, and despite no probable cause to enter the vehicle, Agent Constantino chose to enter the vehicle against the plaintiff's directions and commenced to search without authorization." *Id*.

Plaintiff was ultimately given two citations—one for the seatbelt and one for the suspended license. *Id*. at 28–29, 30, 33, 35.  Although Officer Constantino briefly placed plaintiff in handcuffs during the encounter and "made" plaintiff "believe he was going to jail" for the suspended license, plaintiff was ultimately released and not placed under arrest. *Id*. at 38.

**2. July 2021**

Sometime in July 2021, plaintiff had just mailed legal paperwork from a FedEx in Millbrae, California when he was stopped a few blocks away by two individuals whom he believed were undercover police officers. *Id*. at 14. The FAC states the two officers waited for plaintiff in a parked vehicle:

> The vehicle was a large black SUV. Plaintiff contends it was similar to a Chevy Suburban, Expedition, or a Cadillac. It is apparent to the plaintiff that the vehicle was an undercover police vehicle often depicted in the movies as a federal agent vehicle that is commonly used vehicle by law enforcement entities-Such as Secret Service agents would use to guard critically important individuals such as the [p]resident as the Secret Service.
> […]
>
> The officers never at any point mentioned what police department the undercover agents were affiliated with in reference to the nature of their jurisdiction.
> […]
>
> Plaintiff alleges the officers had attempted to confront him based on the fact he had filed another lawsuit by way of mail in the Northern District of California. Multiple lawsuits were filed against employees of San Mateo County and the City of Millbrae. Officers in their individual and official capacity had both been sued. He had delivered the lawsuit moment prior to this subsequent contact with the two under-cover law enforcement agent and argue it is anything but coincidence that law enforcement officers again approached him…

*Id*. at 44–45. The FAC alleges that upon being confronted, the two alleged police officers "accus[ed] the plaintiff of committing a theft at the local grocery store." *Id*. at 45. "[T]he officer exhibited a complete rudeness through unlawful seizure techniques to continually ask the plaintiff to open his bag so that the under-cover agents may search, the laptop carrying case." *Id*. Plaintiff objected to the officer's repeated requests to search his belongings. *Id*. at 46. The FAC states plaintiff "was carrying legal documents in a triad of reams. Many documents were evidence against illegal law enforcement activity." *Id*. at 46, 47.

After plaintiff "continually notified the officers that he had stolen nothing at any store, the officers transitioned, becoming angry at the plaintiff's continuing exercise of his legal rights and

officer began breathing heavily and talking in the plaintiff's ear while walking around him." *Id*. at 48. The FAC states that one of the men walked around plaintiff and breathed down his neck as a demonstration of "violence on the plaintiff." *Id*. at 50. The FAC does not state a search of plaintiff's belongings actually occurred (although, the FAC states "[n]o items were found in the plaintiff's possession." *Id*. at 51). The FAC further states "police officers never identified themselves as law enforcement officers to any degree. They did not reveal a badge and the plaintiff was only aware they were police due to the questioning and the black SUV that they were located a short few feet from." *Id*. at 51–52.

### 3. August 19, 2021

On August 19, 2021, plaintiff was detained upon suspicion of theft from a Safeway Grocery Store in Millbrae, California. The FAC alleges plaintiff entered the Safeway around 7:00 am but declined "to purchase any products, and left a short duration of time later. Prior to leaving the store, he may have walked towards-and went down the back isle all the way south of the store, then proceeded north, then west towards the exit." *Id*. at 55. The FAC alleges that when plaintiff was a few feet from the exit, he

> turned around, after hearing and a male and a female voice called out to the plaintiff. He could not hear exactly what the individual had said. Another voice called out after the plaintiff made a statement paraphrased as "[W]hy are you causing me trouble." The plaintiff does not recall exactly what the individuals stated, however, there were three separate alleged employees of the Safeway Grocer who made some kind of verbal communication to the plaintiff he cannot recall.
> […]
>
> Plaintiff assumed the individuals were accusing him of stealing due to the obvious nature and tone. He recalls their tone being rude and accusatory. No politeness was sensed by the plaintiff and he remains upset the grocer staff-security security-staff would falsely criticize one of Safeway's customers.

*Id*. at 55. The FAC does not state whether plaintiff contested or denied the Safeway employees' accusations, but insists plaintiff "had stolen nothing from the store and thus was at liberty to leave

6

and chose to demonstrate such action." *Id*. at 57.  "The plaintiff took the escalator at an average

rate of speed and exited the store in a rational amount of time, knowing he had done no wrongdoing."

*Id*.  Plaintiff then picked up a coffee at a nearby 7-11, but was soon stopped by police a few blocks

away.  *Id*. at 58.  After a police cruiser pulled up, plaintiff

> stopped walking when the vehicle moved in front of him and the officer exited the
> vehicle in a short period of time plaintiff was certainly surprised and startled by the
> unorthodox policing maneuver.
> […]
>
> The officer walked relatively quickly from the vehicle and approached the plaintiff
> and "quickly picking" the coffee from the hand of the plaintiff and through it to the
> ground, primarily hitting the lower pant leg of his clothes. His pants became saturated
> and the plaintiff later took a picture to preserve as evidence of the gross mistreatment
> by the first officer on the scene.

*Id*. at 59.  The initiating officer, "either Officer Cheng or Officer Cheung," told plaintiff he was

"accused of the theft by staff or all security at the Safeway."  *Id*. at 60.  Two additional officers

arrived—Deputy Azar "and either Officer Cheng or Officer Cheung." *Id*. at 61. "The fourth officer

on the scene was Officer Constantino, who is explained as the officer handling the event on May

27, 2021."  *Id*.  Plaintiff "made some words of contentions to the initial officer on the scene, since

revealing emotional frustrations to the officer, reflecting frustrations about being doused with his

own purchased coffee and falsely blamed for crimes he did not commit."  *Id*. at 61.

The FAC alleges that soon all four officers arrived, plaintiff "was eventually handcuffed in

an extremely cruel way without any justification."  *Id*. at 64.  The FAC alleges that Officer

Constantino "chose to jump at the plaintiff & retaliate against him for May 27th incident and

connections with his interest with Colorado law enforcement."  *Id*. at 64.  Due to this alleged

preexisting animus, the FAC alleges Officer Constantino

> Grabbed the plaintiff without any justification or professed knowledge pertaining to
> the situation and began twisting the wrist aggressively, in the violent manner
> fathomable to bring insult to harm to the plaintiff-and the utmost strength that he
> could utilize with his energy-demonstrating to the plaintiff the officer held great
> strength, in a heinous act of abuse[.]

7

*Id*. at 65.  Upon being seized, plaintiff  "began screaming very loud and was in agony," but "showed no signs of resisting arrest or struggle with the officers during the excessive force by police." *Id*. at 66, 68.  The FAC then alleges the other officers "instigated a tying of the feet of the plaintiff without warrant, by placing his legs together with four officers now-taking possession of the plaintiff with no legitimacy whatsoever." *Id*. at 68.  "The plaintiff would be thrown on the hood of the car and placed in the vehicle in an incident that lasted over an hour." *Id*. at 69.  Plaintiff was released soon after.  The FAC states

> The plaintiff has taken pictures of his wrist bleeding which is directly associated with the police mishandling him and damaging his wrist in what was an excessive appearance and exertion of force. His pants being "wetted" (plaintiff) with coffee, the officer threw out of his hand at the immediate point they came into contact with each other-also recorded through photographs, alongside the bleeding hands.

*Id*. at 71.  Finally, the FAC states: "One statement the plaintiff remembers hearing between the officers was one [Safeway] employee was said to claim the plaintiff was trying to engage a physical altercation with the employees. This statement was not intended for the plaintiff to over hear and said several feet from the plaintiff." *Id*. at 69.


## LEGAL STANDARD

### A. FRCP 12(b)(6)

To survive a Fed. R. Civ. P. 12(b)(6) motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007), by alleging facts that add up to "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Courts do not require "heightened fact pleading of specifics," but plaintiff must allege facts sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555, 570.

A court reviewing a complaint under Rule 12(b)(6) must accept as true all factual allegations in a complaint, but need not accept as true mere "threadbare recitals" of the legal elements of a cause

of action.  *Iqbal*, 556 U.S. at 678.  Similarly, "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences" are not presumed true.  *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).  For *pro se* pleadings, the court must "construe the pleadings liberally and [] afford the [plaintiff] the benefit of any doubt."  *Bretz v. Kelman*, 773 F.2d 1026, 1027 n.1 (9th Cir. 1985) (en banc).  However, sufficient facts must still be alleged from which the Court can infer the existence of a plausible right of relief.  *Ivey v. Bd. of Regents of Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982).

### B. FRCP 8(a)

Rule 8 of the Federal Rules of Civil Procedure requires that a pleading contain a "short and plain statement" of the grounds for jurisdiction and the claim, as well as a demand for relief sought. Fed. R. Civ. P. 8(a).  "[T]here are multiple ways that [Rule 8(a)] can be violated."  *Knapp v. Hogan*, 738 F.3d 1106, 1109 (9th Cir. 2013).  "One well-known type of violation is when a pleading says too little."  *Id*.  "The Rule is also violated, though, when a pleading says too much."  *Id. See Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1058 (9th Cir. 2011) ("[W]e have never held—and we know of no authority supporting the proposition—that a pleading may be of unlimited length and opacity. Our cases instruct otherwise."); *McHenry v. Renne*, 84 F.3d 1172, 1179–80 (9th Cir.1996) (affirming a dismissal under Rule 8, and recognizing that "[p]rolix, confusing complaints such as the ones plaintiffs filed in this case impose unfair burdens on litigants and judges").

### C. Section 1915(e)(2)(B)

Before authorizing the U.S. Marshal to serve a complaint filed by a litigant proceeding *in forma pauperis*, the court must screen it for minimum legal viability. 28 U.S.C. § 1915(e)(2)(B). "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines" the action is "(i) is frivolous or malicious; (ii)

fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." *Id*. Each ground provides an independent basis for dismissal.

"It is well-settled that when determining whether a plaintiff has failed to state a claim upon relief can be granted under § 1915(e)(2), courts use the Rule 12(b)(6) standard of review." *Teahan v. Wilhelm*, 481 F. Supp. 2d 1115, 1119 (S.D. Cal. 2007). Dismissal for frivolousness is not a dismissal on the merits, "but rather an exercise of the court's discretion under the in forma pauperis statute." *Denton v. Hernandez*, 504 U.S. 25, 34 (1992). A court may dismiss a claim on qualified immunity ground under subsection 1915(e)(2)(B)(iii) if it "is clear from the complaint that the plaintiff can present no evidence that could overcome a defense of qualified immunity." *Chavez v. Robinson*, 817 F.3d 1162, 1169 (9th Cir. 2016), as amended on reh'g (Apr. 15, 2016).

## DISCUSSION

The FAC raises over 20 distinct "claims."[3] Below, the Court provides sustained treatment to only the most colorable claims: unreasonable search and seizure, excessive force, failure to intervene, and *Monell* liability. The remaining claims are dismissed as frivolous.

### A. Failure to State a Claim

#### 1. Fourth Amendment Unreasonable Search and Seizure Claims

The Fourth Amendment's prohibition against unreasonable searches and seizures does not

---

[3] The FAC lists the following: "Declaratory Relief Question (Rule 57 of the Federal Rules of Civil Procedure); Corruption Practices Act; 8th Amend. U.S. Life, Liberty, and the Pursuit of Happiness; 4th Amend. U.S. Const. Illegal Search and Seizure; 4th Amend. U.S. Const. False Arrest; 4th Amend. U.S. Const. Failure to Intervene; (1) 9th Amend. U.S. Const. Enumeration of Rights not to Deny or Disparage People (2) Contract of city and county claim; (1) 14th Amend. U.S. Const. Due Process (2) Contract of city and county claim; (1) 14th Amend. U.S. Const. Equality of Law (2) Contract of city and county claim; 14th Amend. U.S. Const. Excessive Force; Abuse of Process; Abuse of Power; Abuse by a Public Official; Obstruction of Justice; Harassment; Threats; Stalking; Intimidation; False accusations; Emotional Distress; Bane Act; Negligence; False Imprisonment" FAC at 93–94.

United States District Court
Northern District of California

prevent police officers from making investigative stops based on reasonable suspicion. *United States v. Ibarra*, 345 F.3d 711, 713 n. 1 (9th Cir. 2003). "Reasonable suspicion is formed by 'specific, articulable facts which, together with objective and reasonable inferences, form the basis for suspecting that the particular person detained is engaged in criminal activity.'" *United States v. Lopez-Soto*, 205 F.3d 1101, 1105 (9th Cir. 2000) (quoting *United States v. Michael R.*, 90 F.3d 340, 345 (9th Cir. 1996)). "An officer is entitled to rely on his training and experience in drawing inferences from the facts he observes, but those inferences must also 'be grounded in objective facts and be capable of rational explanation.'" *Id.* The subjective intentions of the officer will not invalidate an otherwise lawful search or seizure backed by objectively reasonable suspicion. *Ibarra*, 345 F.3d at 714 (discussing *Whren v. United States*, 517 U.S. 806, 813 (1996)).

Here, the FAC fails to adequately allege an unreasonable search and seizure occurred. The FAC concedes that on May 27, 2021, plaintiff was pulled over after Officer Constantino saw him driving without a seatbelt in violation of California traffic laws. Even if Officer Constantino had other motives (e.g., furthering a clandestine interstate conspiracy with Colorado law enforcement), plaintiff's failure to wear a seatbelt provides an objectively reasonable basis for the stop. The FAC also concedes plaintiff was driving on a suspended license, which would justify prolonging the stop and issuing a citation. Although the FAC includes an allegation of an unlawful search of plaintiff's vehicle, see FAC 30, the allegation is merely a threadbare recital of the legal elements of an unconstitutional search and lacks factual enhancement. The May 27, 2021 incident thus fails to allege an unreasonable search or seizure.

The July 2021 incident also fails to state a claim of unreasonable search and seizure. As a preliminary matter, the FAC does not provide a plausible basis for inferring that the two individuals who stopped plaintiff were actually law enforcement. The FAC alleges the following facts to assert the individuals were undercover police officers: (1) they drove a black SUV, (2) one of them was Scottish-American and wore a "signature button-dress" shirt, (3) the other "displayed long hair that

11

was signature of a narcotics officer," and (4) one of them "displayed an investigative persona." FAC 44, 51–53. The FAC states the two men identified themselves as law enforcement. But even if the allegations in the FAC were sufficient to infer that the two unnamed men were police, the FAC fails to allege plaintiff, or his property, was seized within the meaning of the Fourth Amendment. *See Torres v. Madrid*, 141 S. Ct. 989, 1003 (2021) (a person is seized through "the application of physical force to the body of a person with intent to restrain…even if the person does not submit and is not subdued."); *Brewster v. Beck*, 859 F.3d 1194, 1196 (9th Cir. 2017) (property is seized by any "meaningful interference with an individual's possessory interests in [his] property.").

The August 19, 2021 incident fails to state a claim as well. Based on the allegations presented in the FAC, Officers Constantino, Azar, Chung, and Cheung had reasonable suspicion to temporarily detain Lindblad outside of the Safeway. Lindblad himself was aware that he was suspected of theft and proceeded to exit the store. The statements by police officers made clear that Lindblad was stopped based on the suspicion of theft and of instigating a physical altercation with the store employees. The Officers thus had an objectively reasonable basis for suspecting Lindblad of criminal activity and conducting a stop.

### 2. Fourth Amendment Excessive Force Claims

Courts apply an objective inquiry to determine whether excessive force was used by police officers. *C.B. v. Moreno Valley Unified Sch. Dist.*, 544 F. Supp. 3d 973, 988 (C.D. Cal. 2021). "The 'reasonableness' of an officer's particular use of force 'must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight.'" *Id.* (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)). This test considers the totality of the circumstances, including "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396.

The allegations for both May 27, 2021 and July 2021 fail to state that force was used at all. Even if being "extremely rude" or walking circles around a suspect could qualify as "use of force" by police under the Fourth Amendment, a right to be free from such nonphysical interactions would not be "clearly established" for purpose of overcoming qualified immunity.  Accordingly, the claim of excessive force as it pertains to May 27, 2021 and July 2021 is factually insufficient.

As to the August 19, 2021 incident, the FAC fails to state a viable excessive force claim against Officers Constantino, Azar, Chung, and Cheung.  Per the FAC, plaintiff began arguing with the first officer on the scene moments after the officer arrived.  FAC at 61 (stating plaintiff "made some words of contentions to the initial officer on the scene, since revealing emotional frustrations to the officer…").  At the time of their arrival, police not only suspected plaintiff of having committed theft from Safeway, but also suspected plaintiff of "trying to engage [in] a physical altercation with the employees" as he left the store.  *Id.* at 69.  Whether these accusations were accurate or not, the officer's awareness of them, in tandem with Lindblad's verbal outbursts, would render the use of force that did occur reasonable under the totality of the circumstances.  The claims of excessive force pertaining to August 19, 2021 thus fail.

### 3. Failure to Intervene

Police officers can be held liable for failing to intercede in situations of claimed excessive force by other officers only if they had an opportunity to intervene.  *Hughes v. Rodriguez*, 31 F.4th 1211 (9th Cir. 2022). *See Cunningham v. Gates*, 229 F.3d 1271, 1289–90 (9th Cir. 2000) (failure to intervene claim fails where officers had no realistic opportunity to prevent rapidly unfolding shooting).  Because the FAC fails to state a claim of excessive force as to any officer, the failure to intervene claim fails as well.  *See United States v. Koon*, 34 F.3d 1416, 1447 n. 25 (9th Cir.1994), rev'd on other grounds, 518 U.S. 81 (1996) ("[T]he constitutional right violated by the passive defendant is analytically the same as the right violated by the person who strikes the blows.").

13

### 4. *Monell* **Claims**

A municipality cannot be sued under a theory of respondeat superior for injuries inflicted by its employees or agents.  *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690-91 (1978).  Rather, municipalities are subject to damages under 42 U.S.C. § 1983 if the plaintiff proves: (1) an alleged constitutional violation occurred pursuant to a formal governmental policy or a longstanding practice or custom; (2) that the individual who committed the constitutional tort was an official with final policy-making authority and that the challenged action itself thus constituted an act of official governmental policy; or (3) that an official with final policy-making authority ratified a subordinate's unconstitutional decision or action and the basis for it.  *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996) (quoting *Gillette v. Delmore*, 979 F.2d 1342, 1346–47 (9th Cir. 1992)).

Here, the FAC alleges *Monell* claims against San Mateo County and the City of Millbrae. As to the City of Millbrae, the FAC alleges the events described in the complaint "violated" the following two City policies: "3-16-l(II)(l)(a) [D]ischarge faithfully the duties of their position regardless of personal considerations, recognizing that public interest and trust must be their primary concern," FAC 15, 42, 52; and "3-16-l(II)(l)(b) [p]ublic employees are bound to uphold the Constitution of the United States and the State of California, and to carry out impartiality the laws of the nation, state, and municipality."  FAC 15, 53, 72, 78, 82.

The FAC misapprehends the nature of *Monell* liability.  At best, the *Monell* allegations directed at the City of Millbrae indicate that defendants acted *contrary* to municipal policies which would have, if followed, afforded greater protection of plaintiff's rights.  *See, e.g.*, FAC at 42 ("The plaintiff contends that the public interest was not afforded and officer on the day of May 27, 2022 [*sic*] had interest only on a personal level and a group level of public entity, over the society of re-public people."); FAC at 53 ("Defendants failed to uphold the constitution of the United States of America and intentionally failed to also enforce and obey the laws of the United States of

14

America.").  Accordingly, the FAC fails to state a *Monell* claim against the City of Millbrae.

The *Monell* claims against San Mateo County are also defective.  Here, the FAC alleges police violated "302.4 Application of cuffs or plastic cuffs," a policy which sets forth procedures officers should follow when restraining a person.  FAC at 72–73 (the FAC quotes from the alleged policy, which states, in part, for example, "[h]andcuffs, including temporary nylon or plastic cuffs, may be used only to restrain a person's hands to ensure officer safety. […] In most situations, handcuffs should be applied with the hands behind the person's back. When feasible, handcuffs should be double-locked to prevent tightening, which may cause undue discomfort or injury to the hands or wrists.").  Again, the FAC inverts *Monell* by alleging that a failure to follow municipal policy led to the purported constitutional injury—not that the *policy itself* caused the constitutional violation.  *Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir. 2011) ("A government entity may not be held liable under 42 U.S.C. § 1983, unless a policy, practice, or custom of the entity can be shown to be a moving force behind a violation of constitutional rights.").

The FAC also presents a puzzling *Monell* allegation against San Mateo County based on a claim that "Colorado Law Officers and the California defendants that are alleged to have conspired against the plaintiff utilized strategies of locating and patterning the locations of the plaintiff to conduct illegal surveillance methods to violate various laws against the plaintiff."  FAC at 42.  In support of this theory for *Monell* liability, the FAC cites San Mateo County Sherriff's Policy Manual 343.2: "Stratified Model of Problem Solving, Analysis and Accountability (Stratified Model) as an Intelligence Led Policing (ILP)."   FAC at 41.  The excerpted potion from that section in the San Mateo County Sheriffs Policy Manual states:

> The Stratified Model distinguishes among different types of incidents for which crime reduction strategies are implemented and designates responsibility based on the type of problem and resources necessary to address the situation. By separating and distinguishing the types of incidents, different analysis, responses, and accountability; mechanisms are carried out by personnel within the agency which "stratifies" the workload and responsibility for problem solving and crime reduction. The word "problem" is used in its most general sense, as a problem that could be a

significant incident, repeat calls for service location, a crime pattern, a hot spot, a community quality of life issue, a traffic problem, a habitual offender, etc.

The Court fails to see any meaningful connection between the cited policy and the allegation that San Mateo County—through its officers or sheriffs—is engaged in an "illegal surveillance" effort "to violate various laws against the plaintiff."

**B. Frivolousness**

All remaining claims alleged in the FAC are dismissed as frivolous pursuant to section 1915(e)(2)(B)(i). *See, e.g.*, FAC at 89 ("It is alleged Chief Bolanos is involved with cartels and organized crime."); *Id*. at 69, 71, 81, 85 (repeatedly commenting on the race of Officers Chung and Cheung and stating "[e]ven the postal, cable, and telephone employees are primarily Chinese across the nation, in what appears a coupe against the ownership rights of Americans with inclusion of the plaintiff," and "arguing the 14 Amendment right to equality have been largely frustrated by minority groups in government who are bias, legally, against Caucasian and White skinned people."); *Id*. at 63 ("Officer Azar, likely being of a Jewish Judaism, appeared particularly annoyed by the First Amendment Freedom of Speech that the plaintiff expressed relevant to the [August 19] situation. After witnessing two Chinese officers arriving on a scene, in a town that was previously predominantly white, it was frustrating for the plaintiff to see the third to arrive was of Jewish descent."); *Id*. at 86–87 ("the Mexican Government is a massive ring of corruption and due to gang activity and a failing economy, the Mexican Government have never been able to operate their government and become susceptible to bribes and using police powers to ascertain personal gain. It is a known feat of the Mexican Government to redraw borders and extract the wealth from the United States."); *Id*. at 25–26 ("plaintiff has multiple people in his family at the pinnacle of economic and political activity" and "defendants attempted to capitalize by identity theft of the plaintiff and his family who hold the strongest royal-bloodline worldwide.").

**C. Rule 8(a)(1)**

As may be evident at this stage of analysis, the FAC contains numerous outlandish details, irrelevant legal citations, and tangents that have no bearing to the core claims at issue.  The FAC is precisely the type of "[p]rolix, confusing" pleading that imposes "unfair burdens on litigants and judges" and justifies dismissal under Rule 8. *McHenry v. Renne*, 84 F.3d 1172, 1179–80 (9th Cir. 1996).  The entirety of the complaint is independently dismissed for failure to follow Rule 8(a)(1).

### CONCLUSION

Defendant's motion to dismiss the County Defendants is **GRANTED**.  The entire FAC will be also dismissed as to all defendants as frivolous under the *in forma pauperis* statute.  The Court has previously warned plaintiff that further leave to amend would not be granted if the Court found merit to a subsequent motion to dismiss.  Rather than adding factual enhancement to the Amended Complaint to address the deficiencies identified in defendants' earlier motion to dismiss, plaintiff added 70 pages of redundant, immaterial, impertinent, or scandalous matter, and in doing so, violated Rule 8(a)'s simple dictates.

Dismissal is thus issued without leave to amend.

### OTHER PENDING MOTIONS

Three other motions remain pending in this lawsuit. The Court decides as follows.

**A. Motion to Compel, Dkt. No. 59 – MOOT**

Because the Court will dismiss this case without leave to amend, all discovery obligations are extinguished, and any outstanding discovery disputes are therefore moot.

**B. Motion to Set Aside Judgment, Dkt. No. 76 – STRICKEN**

Plaintiff filed a motion to set aside judgment on May 25, 2022.  At the time, no judgments were entered in this lawsuit.  The case number included on the motion's coversheet is 21-cv-07814;

United States District Court
Northern District of California

the Court concludes plaintiff filed the motion in the wrong case.  The motion is accordingly stricken.

### C. Motion for Sanctions, Dkt. No. 81 – DENIED

Plaintiff filed a motion seeking Rule 11 sanctions against defense counsel Jennifer Stalzer. Dkt. No. 81.  Four grounds for sanctions are alleged.  The Court finds each ground meritless and thus denies the motion in its entirety.

First, plaintiff alleges sanctions are warranted because an individual named "Alina Amezcua had submitted a legal document on April 15, 2022, as a response and opposition to a motion to compel submitted by the plaintiff."  *Id.* at ¶ 6.  Plaintiff contends this is an unauthorized practice of law and a violation of the Rules of Professional Conduct, as Amezcua is not a licensed attorney.  *Id.* at ¶¶ 3, 27.  However, the April 15 filing is signed by Stalzer; Amezcua's signature only appears on the certificate and proof of service.  Dkt. No. 64.  California law provides "[a] summons may be served by any person who is at least 18 years of age and not a party to the action."  Cal. Civ. Proc. Code § 414.10.  Because state law may provide the proper procedure for service, *see* Fed. R. Civ. P. 4(e)(1), the submission containing Amezcua's signature is proper.

Second, plaintiff alleges that factual statements made in docket entries 24 and 64 are intentionally fraudulent and inconsistent with events that occurred on August 19, 2021.  Dkt. No. 81 at ¶ 32.  These inconsistencies are with respect to the color of, and whether plaintiff owned, a "cream and black striped shirt[,]" whether plaintiff carried a grey duffel bag, and whether plaintiff threatened to abuse Safeway employees.  *Id.* at ¶¶ 34–40.  Rule 11 allows sanctions if a filing is either legally frivolous or factually misleading.  *Truesdell v. S. California Permanente Med. Grp.*, 293 F.3d 1146, 1153 (9th Cir. 2002).  Here, Rule 11 sanctions over factual disputes are inappropriate;  the record indicates a factual basis existed for the challenged statements.  *See* Defendant's CMC, Dkt. No. 24 at 2 (referencing review of the Computer Aided Dispatch Report).

Third, "plaintiff contends Counsel and Defendant Jennifer Stalzer intervened into case 21-cv-07814" to  conspire against plaintiff.  Motion for Sanctions at ¶ 53.  The Court has consulted the docket for 21-cv-07814 and finds Stalzer has entered no filings in the matter.

Finally, "[p]laintiff asserts the signatures on multiple legal documents submitted by Stalzer

18

are unauthentic with a common '/s/' supplementation or a blank line area in-complete." *Id.* at ¶ 82. Civil Local Rule 5-1(h)(2) provides "[i]n the case of a Signatory who is an ECF user, such document shall be deemed signed, regardless of the existence of a physical signature on the document, provided that such document is filed using the user ID and password of the Signatory." Civil L.R. 5-1(h)(2).  Here, the documents clearly identify Stalzer.  *See, e.g.*, Dkt. No. 79 (identifying Stalzer as a signatory).  Because the filings were submitted through ECF, a physical signature is not required.

The motion for sanctions is denied on the merits.  The Court also notes that Rule 11 prohibits a motion for sanctions to be filed unless notice has been given to the offending party and a 21-day period is afforded for correction of the violation.  Fed .R. Civ. P. 11(b)(2).  There is no indication plaintiff has complied with this requirement.  The motion is independently denied on that basis.

**IT IS SO ORDERED**.

Dated:  July 4, 2022

_____
SUSAN ILLSTON
United States District Judge

United States District Court
Northern District of California

19